# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re ) | |
| ) | |
| BRUCE EDWIN HARRINGTON, ) | Case No. 20-10767-TBM |
| Debtor. ) | Chapter 13 |
| ) | |
| _____ ) | |
| ) | |
| WILLIAM WOLLRAB, ) | Adv. Proc. No. |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BRUCE EDWIN HARRINGTON, ) | |
| Defendant. ) | |

## COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT

William Wollrab, through counsel, respectfully submits his Complaint Objecting to the Dischargeability of Bruce E. Harrington's Debt to him, and states as follows:

### **JURISDICTION**

1. This Court has core jurisdiction over this action pursuant to 28 U.S.C. §157(b)(2)(I). This Court further has jurisdiction over matters arising in or related to a case under Title 11 pursuant to 28 U.S.C. §1334.

2. Debts within the ambit of 11 U.S.C. §523(a)(2) and (a)(4) are nondischargeable in Chapter 13 cases. *In re Wine*, 558 B.R. 438, 444 (Bankr.D.Colo. 2016).

3. Venue is proper pursuant to 28 U.S.C. §1409(a) as the above captioned Debtor filed for relief in Colorado.

## PARTIES

4. William Wollrab ("Mr. Wollrab") is a creditor and party in interest in the underlying bankruptcy case of the Debtor. Mr. Wollrab resides at 220 Barlow Lane, Morro Bay, California 93442.

5. Bruce E. Harrington ("Debtor") is the debtor in the underlying bankruptcy case who resides at 1407 Union Court, Superior, Colorado 80027.

## GENERAL ALLEGATIONS

6. The Debtor filed for relief under Chapter 13 of Title 11 of the United States Code ("Bankruptcy Code") on February 3, 2020 in this Court.

7. The Debtor has not yet received a discharge of any debts in his bankruptcy case.

8. The Debtor has not confirmed a Chapter 13 Plan as of the date of this Complaint.

9. At the time of filing, the Debtor identified himself as the member and/or manager of Fountain Formation Technologies, LLC ("FFT"). *See Docket No. 1, p. 2.*

10. The Debtor also scheduled an interest in Harrington Holdings, LLC and Mopezi, LLC. *Id.* at 18.

11. The Debtor scheduled the value of these companies at zero. *Id.* at 27.

12. The Debtor was the Managing Director of StoneSkins Pavers, LLC ("SSP") in or around April of 2016.

13. The Debtor has also owned, controlled and/or managed many other companies prior to filing bankruptcy.

14. Pre-petition, the Debtor engaged in a pattern of concealment and misrepresentations with Mr. Wollrab and others, in a scheme to obtain loans for his personal benefit.

15. The Debtor is the inventor of several patents for construction materials.

16. Over time, the Debtor caused the transfer of these patents to various companies he owned.

17. Each time the Debtor faced collection efforts by his creditors or if he needed investment monies, the Debtor fraudulently transferred his patents to a new company without adequate consideration and without satisfying the corporate formalities.

18. The Debtor has failed to keep adequate records for his companies and these transfers.

19. The Debtor is not and never has been a licensed securities broker, securities dealer, investment advisor or a broker dealer.

20. The Debtor does not hold any license to practice law, nor does he hold a license to practice before the US Patent and Trademark Office.

## Wollrab Judgment and Agreements

21. Mr. Wollrab is a creditor of the Debtor by virtue of a pre-petition judgment against the Debtor issued by the District Court, Boulder County, State of Colorado ("State Court"), in Civil Action No. 08CV1210 (the "Civil Action").

22. On January 13, 2009, the State Court issued a judgment in favor of Mr. Wollrab in the principal sum of $43,758.84 with post-judgment interest at 18% per annum ("Judgment"). A copy of the Judgment is attached as **Exhibit 1** and incorporated herein.

23. As of the Petition Date, the Judgment had not been satisfied. The Judgment currently exceeds $225,000 with interest at the present time.

24. The Judgment arises out of prior business dealings between Mr. Wollrab, the Debtor and certain companies which were owned and/or controlled by the Debtor.

25. From and after the Judgment, the Debtor engaged in various schemes to keep Mr. Wollrab at bay, including inducing Mr. Wollrab to loan monies to him and his companies.

A. The FFT Agreement

26. On or about April 11, 2016, Mr. Wollrab and the Debtor, among others, entered into a Loan and Debt Agreement ("the FFT Agreement"). A copy of the FFT Agreement is attached as **Exhibit 2** and incorporated herein.

27. Under the terms of the FFT Agreement, the Debtor acknowledged the Judgment entered against him. *Id.*

28. As part of the Debtor's scheme to induce Mr. Wollrab to provide more funds, the Debtor solicited funds from Mr. Wollrab as a loan to FFT in the amount of $20,000 and a loan to SSP in the sum of $20,000. *Id.*

29. In furtherance of his scheme to extract funds from Mr. Wollrab, the Debtor solicited Mr. Wollrab by offering him to convert the loans under the FFT Agreement to equity positions in both FFT and SSP. *Id.*

30. The Debtor also offered to secure Mr. Wollrab's loans with a personal guaranty. A copy of the Debtor's Personal Guaranty is attached as **Exhibit 3** and incorporated herein.

31. The Debtor also offered Mr. Wollrab collateral for such loans in the form of a Security Agreement signed by the Debtor. A copy of the Security Agreement is attached as **Exhibit 4** and incorporated herein.

32. Mr. Wollrab properly perfected a lien on all assets of the Debtor by recording a Financing Statement with the Colorado Secretary of State on September 15, 2017 at Reception No. 20172086615.

33. At the time of the FFT Agreement, the Debtor represented to Mr. Wollrab that, among other things, FFT and SSP were solvent companies, they had sufficient assets, the value of their assets exceeded all indebtedness, that they were able to pay their debts as they became due and owing, and that they owned and/or controlled the Debtor's patents. These statements were false.

34. Similarly, the Debtor represented to Mr. Wollrab that the Debtor's assets exceeded his liabilities such that his personal guaranty would be of value to Mr. Wollrab. These statements were false.

35. In order to further induce Mr. Wollrab to make the loans to FFT and SSP, the Debtor offered to provide Mr. Wollrab a commission for locating further investors for FFT or SSP, as well as a sales commission from FFT.

36. Based upon the representations of the Debtor, Mr. Wollrab accepted the Debtor's offers and loaned FFT and SSP the total sum of $40,000.

37. Mr. Wollrab's acceptance is memorialized in the FFT Agreement.

38. FFT and SSP then jointly executed a Promissory Note in Mr. Wollrab's favor for the $40,000 loan.

39. All amounts owing under the FFT Agreement were due on or before May 1, 2018.

40. Neither the Debtor, FFT nor SSP made any payments to Mr. Wollrab from and after the FFT Agreement.

B. <u>The Mozepi Agreement</u>

41. The Debtor continued his scheme inducing Mr. Wollrab to loan additional monies using another company, Mozepi, LLC.

42. In or around April 12, 206, Mr. Wollrab as lender and Mopezi, LLC as borrower entered into a Debt Agreement ("Mopezi Agreement").

43. Under the Mozepi Agreement, Mr. Wollrab loaned the Debtor, through Mozepi, the sum of $90,000.

44. As collateral for the Mozepi Agreement, the Debtor executed a Security Agreement and Financing Statement between Mr. Wollrab as the secured party and the Debtor, as the borrower, or around April 12, 2016 ("Mopezi Security Agreement").

45. The Debtor further executed a Guaranty Agreement for Mr. Wollrab on or around April 12, 2016 ("Mopezi Guarantee"). A copy of the Mozepi Guaranty is attached hereto as **Exhibit 5** and incorporated herein.

46. To induce Mr. Wollrab to make the loan to Mozepi, the Debtor made similar representations to Mr. Wollrab including, but not limited to, that Mozepi's assets exceeded its liabilities, that Mozepi had funds and/or sources of funds to repay the indebtedness, and that Mozepi was adequately capitalized. These statements were false.

47. All amounts owing under the Mozepi Agreement were due on or before May 1, 2018.

48. Neither the Debtor nor Mozepi made any payments to Mr. Wollrab from and after the Mozepi Agreement.

49. In connection with the Mozepi Agreement, the Debtor offered to and made Mr. Wollrab a member in the Company.

50. The Debtor provided Mr. Wollrab with a membership interest in Mozepi representing 31,85% of the outstanding membership interests to induce Mr. Wollrab's investment with the company.

C. Additional Borrowings

51. In addition to the FFT Agreements and the Mopezi Agreements, the Debtor also induced Mr. Wollrab to make additional loans.

52. On or about October 2, 2017, the Debtor executed a Purchase Order Loan Agreement ("PO Loan Agreement") by which the Debtor borrowed an additional $20,000 from Mr. Wollrab with interest accruing at the rate of 20%.

53. As of August of 2018, the Debtor had repaid only $3,000 of the PO Loan Agreement debt. The Debtor owes $46,333 under the PO Loan Agreement to Mr. Wollrab.

54. The Debtor made similar representations to Mr. Wollrab at the time of the PO Loan Agreement as to his personal financial affairs, including that the Debtor was solvent, that his assets exceeded his liabilities and that he had sources of funds to repay the debt. These statements were false.

D. Transfer of Assets

55. From and after the FFT Agreement, the Mozepi Agreement and the PO Loan Agreement, the Debtor engaged in a scheme to stymy Mr. Wollrab's efforts to collect all sums due.

56. These schemes included, but were not limited to, moving his patents between his companies, and other companies he controlled, offering the patents as security to other companies and investors without Mr. Wollrab's consent or knowledge, and liquidating his companies without observing the required corporate formalities under Colorado law.

57. For instance, the Debtor shut down FFT at some point pre-petition. The Debtor has failed to provide any responsive documents on this shut down following Mr. Wollrab's subpoena.

58. Similarly, the Debtor represented that the value of Harrington Holdings, LLC was zero as it held no assets. Yet, according to the accountant for DecoArmor Technologies, Inc., and Product Development Company, Harrington Holdings is the majority shareholder of these companies.

59. The Debtor continues to work for DecoArmor Technologies on a purported consultant basis. Yet, upon information and belief, DecoArmor Technologies is using the Debtor's patents or technology derivative of such patents.

60. Similarly, the Debtor has performed work for other persons and companies, including assisting with the registration of patents, and raising investor funds.

E. Violation of Colorado's Securities Laws

61. The Debtor sold unregistered and unlicensed securities to Mr. Wollrab in Colorado in violation of Colorado's securities laws, including the FFT Agreement.

62. Colorado's statutory definition of the term "security" includes "any note ... evidence of indebtedness ... participation in any profit sharing agreement ... investment contract ... or, in general, any interest or instrument commonly known as a security ...." Colo.Rev.Stat § 11–51–201(17) (2019). The definition is virtually identical to the definition of "security" in the federal securities act. *See* 15 U.S.C. § 77b(1). The broad scope of the statutory definition evinces "a legislative intent to provide the flexibility needed to regulate the various schemes devised by those who seek to use the money of others with the lure of profits." *Lowery v. Ford Hill Investment Company*, 192 Colo. 125, 130, 556 P.2d 1201,1205 (1976).

63. A promissory note falls squarely within the language of Colorado's Securities Act. *People v. Milne*, 690 P.2d 829, 833 (Colo. 1984). *See also, Lowery v. Ford Hill Investment Company,* 192 Colo. at 130, 556 P.2d at 1205.

64. "The touchstone of a security is the presence of an investment in a common enterprise that is premised on a reasonable expectation of profits to be derived from the entreprenurial or managerial efforts of others." *People v. Milne*, 690 P.2d 829, 833 (citing *United Housing Foundation v. Forman*, 421 U.S. 837, 852 (1975); *SEC v. W.J. Howey Company*, 328 U.S. 293, 298-99 (1946); *Lowery*, 192 Colo. at 130, 556 P.2d at 1205).

65. As in *People v. Milne, supra,* Mr. Wollrab entrusted his money with the Debtor in return for "investment notes." Mr. Wollrab expected to receive periodic payments of interest on his notes together with repayment of the principal amount.

66. The Debtor also offered Mr. Wollrab additional terms of repayment, collateral and other sources of payments to induce Mr. Wollrab to retain his notes, to encourage further loans, and to attract additional loans with a favorable return.

67. Mr. Wollrab also invested with the Debtor and his companies to receive profits from FFT and SSP.

68. Moreover, the source of repayment to Mr. Wollrab was dependent upon the continuing operation and success of FFT, SSP and Mozepi, among others.

69. Should the FFT, SSP and/or Mozepi become insolvent or sustain substantial financial losses, as is actually the case, the source of the funds from which payment was to be made to Mr. Wollrab was be lost.

70. Further, Mr. Wollrab's expectation of profits from FFT and SSP derived solely from the managerial efforts of others, including the Debtor.

71. In other words, payment of Mr. Wollrab's loans depended solely upon the ability of the Debtor and others to successfully manage and operate the companies.

72. Mr. Wollrab had no ability to control or manage the funds he invested or otherwise ensure that their promised return was actually paid.

73. Colorado's Securities Act makes it unlawful for any person to offer or sell any security in Colorado unless it is registered, the security is exempted under certain provisions, or the security is a federally covered security. Colo.Rev.Stat. §11-51-301

74. Colorado's Securities Act also does not allow a person to transact business in Colorado as a broker-dealer, or sales representative unless licensed or exempt from licensing. Colo.Rev.Stat. §11-51-401(1).

75. Similarly, Colorado forbids a person acting as an investment advisor unless such person is licensed. *Id.* §11-51-401(1.5).

76. One of the purposes of the licensing requirement under Colorado's Securities Act is to protect the public from the financial insecurity and fraudulent activities of persons regularly engaged in the sale of securities. *H.L. Shaffer and Company v. Prosser*, 99 Colo. 335, 62 P.2d 1161 (1936). The purpose is similar to the purpose underlying the registration and disclosure provisions of the act. *See Lowery,* 192 Colo. at 133, 556 P.2d at 1207.

77. The Debtor sold unregistered securities to Mr. Wollrab in the form of promissory notes as investments in FFT, SSP and Mozepi, among others.

78. The Debtor was not a licensed broker-dealer, sales representative or investment advisor at the time he offered the notes to Mr. Wollrab.

79. Under Colorado law, it is unlawful for any person in connection with the offer, sale or purchase of any security, directly or indirectly, to employ any device, scheme or artifice to defraud, to make any untrue statement of material fact or to omit a material fact, and/or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. Colo.Rev.Stat §§11-51-501(1)(a), (1)(b) and (1)(b).

80. Any person who sells a security in violation of Colorado law is liable to the person buying the security from such seller for the consideration paid for the security, together with interest at the statutory rate from the date of payment and reasonable attorneys fees. Colo.Rev.Stat §11-51-604(1).

81. Mr. Wollrab relied on the Debtor's representations of his assets, as well as the Debtor's representations as to the financial health of FFT, SSP, and Mozepi, among others, to make the investments set forth above.

82. As a direct and proximate cause of the Debtor's fraud, including false and misleading statements of material fact, Mr. Wollrab has been damaged in an amount exceeding $300,000.

## FIRST CLAIM FOR RELIEF
(Determination of Dischargeability, 11 U.S.C. §523(a)(2)(A))

83. Mr. Wollrab incorporates by reference the statements and allegations contained in the preceding paragraphs as though more fully set forth in this Claim for Relief.

84. The Debtor obtained money and property from and incurred debts and liabilities to Mr. Wollrab by false pretenses, false representations, or actual fraud.

85. The Debtor's fraudulent schemes and violations of Colorado's Securities Act induced Mr. Wollrab to make investments in FFT, SSP and Mozepi, among others.

86. As a direct and proximate result of the Debtor's actions and/or failures to act, Mr. Wollrab has been damaged in an amount to be proven at trial or hearing.

87. Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 1328(a)(2), the Debtor's indebtedness and liabilities to Mr. Wollrab is nondischargeable.

WHEREFORE, Mr. Wollrab respectfully requests that this Court enter judgment in his favor and against the Debtor determining that all sums due and owing to Mr. Wollrab by the Debtor are excepted from the Debtor's discharge under the provisions of 11 U.S.C. §§523(a)(2)(A) and 1328(a)(2), for Mr. Wollrab's costs, including reasonable attorneys' fees, as provided by law and/or agreement, and for such other and further relief as the Court deems appropriate.

### SECOND CLAIM FOR RELIEF
(Determination of Dischargeability 11 U.S.C. §523(a)(4))

88. Mr. Wollrab incorporates by reference the statements and allegations contained in the preceding paragraphs as though more fully set forth in this Claim for Relief.

89. The Debtor obtained money property from Mr. Wollrab by fraud or defalcation which acting in a fiduciary capacity, embezzlement and/or larceny as more fully set forth above.

90. The Debtor's fraudulent schemes and violations of Colorado's Securities Act induced Mr. Wollrab to make investments in FFT, SSP and Mozepi, among others.

91. As a direct and proximate result of the Debtor's actions and/or failures to act, Mr. Wollrab has been damaged in an amount to be proven at trial or hearing.

92. Pursuant to 11 U.S.C. §§523(a)(4) and 1328(a)(2), the Debtor's indebtedness and liabilities to Mr. Wollrab is nondischargeable.

WHEREFORE, Mr. Wollrab respectfully requests that this Court enter judgment in his favor and against the Debtor determining that all sums due and owing to Mr. Wollrab by the Debtor are excepted from the Debtor's discharge under the provisions of 11 U.S.C. §§523(a)(4) and 1328(a)(2), for Mr. Wollrab's costs, including reasonable attorneys' fees, as provided by law and/or agreement, and for such other and further relief as the Court deems appropriate.

|  |  |
|---|---|
| DATED: June 17, 2020. | Respectfully submitted,<br>BUECHLER LAW OFFICE, LLC<br><br>*K. Jamie Buechler*<br><br>_____<br>K. Jamie Buechler, #30906<br>999 18th Street, Suite 1230-S<br>Denver, Colorado 80202<br>Tel: 720-381-0045<br>Fax: 720-381-0382<br>Jamie@KJBlawoffice.com |